

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00461-CR

James Ray **BUTLER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 40th Judicial District Court, Ellis County, Texas
Trial Court No. 37351CR
Honorable Robert (Bob) Carroll, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
                Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  May 21, 2014

AFFIRMED

      James Ray Butler appeals his conviction for theft of property with a value of $1500 or more but less than $20,000. His punishment was enhanced by two prior felony convictions, and he was sentenced to ten years imprisonment. In two issues, Butler argues (1) the evidence was legally insufficient to support his conviction,[1] and (2) the trial court erred in admitting two documents the State offered to prove prior convictions during the punishment phase of the trial. We affirm.

---

[1] Although Butler uses the term "factual insufficiency" in his brief, we construe his argument as one claiming legal insufficiency. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (holding legal-sufficiency standard is the only standard a reviewing court should apply in determining sufficiency of evidence).

**BACKGROUND**

In the early morning hours of September 17, 2012, Raymond Wilson was driving to work at Timco, which is located in Waxahachie, Texas. At about 3:30 or 4:00 a.m., he approached Timco and noticed something unusual at Landmark Equipment, the business located next to Timco. He saw a pickup truck parked in the driveway, which he testified was odd for that time of the morning. He also noticed the gate at Landmark was open even though it was not Landmark's normal business hours. He then drove toward Landmark and "noticed a couple of guys or whatever jump" into a pickup truck "and run the stop sign and make a right." Wilson saw a flatbed trailer attached to the pickup truck. On the trailer he saw some kind of equipment, which looked like a four-wheeler. Wilson followed the men in the pickup truck and called 9-1-1. The dispatcher told Wilson to turn on his emergency flashers so the responding officers would be able to distinguish him from other people. According to Wilson, once he turned on his emergency flashers, it seemed like the flashers might have alerted the men in the pickup truck because the driver increased the speed of the pickup truck. As Wilson followed the men, he continued to talk to the 9-1-1 dispatcher to give his location.

Wilson followed the men in the speeding pickup truck, and eventually the pickup truck slowed and pulled into a driveway. Wilson testified that because there was no other way out, the men came back down the driveway in the pickup truck and headed back towards him so that he was now in front of the men. As the men approached the airport, Wilson saw them pull off the road and go down a little dirt road that runs beside the airport. Wilson did not pull in behind the men. He then saw the truck come back to the main road without the trailer attached. Officers from both Waxahachie and Midlothian then arrived and stopped the men in the pickup truck. Wilson also stopped and waited for the officers to talk to him. According to Wilson, he was never close enough to the men to be able to identify them. However, Wilson was able to testify that the pictures

of the truck, trailer, and piece of equipment shown to him by the State looked like the truck, trailer, and piece of equipment he was following on the morning in question.

Gary Lyle, vice-president of Landmark Equipment and store manager for the Waxahachie location, testified that Landmark is not open at 3:00 a.m. According to Lyle, the property is gated and fenced, and there are also motion detectors and a security system. The lock on the gate has a shroud around it so that one cannot normally get a set of bolt cutters inside and open them wide enough to be able to cut the lock. When shown a set of bolt cutters that had been found in the pickup truck, Lyle said he had never seen ones that looked like that. According to Lyle, the bolt cutters looked to him like they could go in a little further before they open.

Lyle testified that on September 17, 2012, he was notified about a possible theft at Landmark. He met officers at the business and could see that the gate was cut and opened. He also noticed that an orange utility vehicle was missing. Lyle testified that the value of the missing vehicle was about $9,000. According to Lyle, after meeting with the officers, he followed them to a road next to the airport. The road is a single dirt road with barbed wire fences on each side. With some difficulty, due to the narrowness of the road, and with the help of two officers, Lyle was able to retrieve the utility vehicle and take it back to Landmark.

Several officers testified at trial. Among them was Michael McCorkle, a deputy with the Ellis County Sheriff's Office. On the morning in question, Deputy McCorkle was on routine patrol when he responded to a call for a theft in progress from a Waxahachie dispatcher. As he approached the Waxahachie airport, he saw a pickup truck accelerate out of the airport area, run a stop sign in the middle of the median and then quickly make a left turn. According to Deputy McCorkle, the behavior of the driver was not consistent with what you normally see with the motoring public; it was obvious the driver was in a hurry. Deputy McCorkle activated the lights on his patrol car, and the driver of the pickup truck pulled over. Deputy McCorkle ordered both

the driver and passenger out of the pickup truck. Waxahachie police officers then arrived. Deputy McCorkle was able to identify the passenger of the pickup truck as the defendant, Butler.

Also testifying was Justin Kirk, a patrol officer with the Waxahachie police department. Officer Kirk was called to the scene where Deputy McCorkle had stopped a pickup truck near the Waxahachie airport. Officer Kirk testified the passenger of the pickup truck was Butler. Officer Kirk took pictures of the pickup truck, which was equipped with a tow hitch. The pictures were admitted into evidence. Officer Kirk also identified pictures he took of a tool bag and some bolt cutters, screws, lug nuts, and a chain that were all found in the pickup truck.

Ryan Wilmot, a Waxahachie police department patrol officer, testified that he responded to the area of the traffic stop and eventually went to the private gravel driveway next to the airport. According to Officer Wilmot, the gravel road was so narrow, two cars could not fit side by side. He was able to locate a flatbed trailer with an orange MTV Mad Dog on top of the trailer. Officer Wilmot testified that the piece of equipment had a big sticker on it that said Landmark Equipment, along with the telephone number and address of the Waxahachie location. It also had a price tag of $8,995 on it. Someone from Landmark then arrived, and Officer Wilmot released the equipment to him.

Joshua Oliver, a police officer with the Waxahachie police department, also responded to the dispatch involving the theft. Officer Oliver investigated the scene at Landmark Equipment. He saw that one of the gates was open, and a Master lock had been cut and was on the ground. He met with Gary Lyle, a Landmark employee, who gave him a description of a vehicle that was missing from the property. According to Officer Oliver, officers who were near the airport confirmed that the equipment they found matched Lyle's description of the missing equipment. Officer Oliver then followed Lyle to the airport where the equipment was located. He helped Lyle load the equipment onto a trailer.

During the punishment phase of the trial, Butler pled true to two prior felonies for enhancement purposes. The State then called a fingerprint identification expert to connect several prior convictions to Butler. First, the expert identified a "ten-print card," which had inked impressions he took from Butler. The expert then identified State's Exhibits 34, 35, 36, 37, 38, 39 and 40 as penitentiary packets from six prior convictions that bore Butler's fingerprints. Exhibit 34 reflected a conviction for delivery of a controlled substance; Exhibits 35, 36 and 37 reflected convictions for possession of a controlled substance; Exhibit 38 reflected a conviction for driving while license suspended; Exhibit 39 reflected a conviction for failure to identify to a police officer; and Exhibit 40 reflected a conviction for assault, bodily injury on a family member.

The State then asked the expert about State's Exhibit 41. The witness testified that the inked print was of such poor quality he was unable to make a comparison to Butler's fingerprint. The expert did testify, however, that the exhibit contained a unique identifying number assigned to Butler, which was also contained within Exhibits 39 and 40. Exhibit 41 reflected a conviction for unlawfully carrying a weapon. The State asked the expert about Exhibit 42 and, once again, he testified that because the print was of such poor quality, he could not make a comparison. The expert did, however, testify that Exhibit 42 bore the same unique identifying number that was contained in Exhibits 39 and 40. Exhibit 42 reflected a conviction for driving while intoxicated. The expert identified the unique number that was contained in Exhibits 39, 40, 41 and 42 as CID number 0197805, which is a county identification number assigned out of Tarrant County, Texas.

After hearing the evidence, the jury returned a sentence of ten years imprisonment. Butler appeals.

SUFFICIENCY

In his first issue, Butler contends the evidence is insufficient to sustain his conviction for the crime of theft. Specifically, he points out that the evidence shows he was merely present near

the scene in a truck similar to the one the witness saw. According to Butler, the evidence shows only the mere opportunity for him to have committed the crime.

In a federal due-process evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011), *cert. denied*, 132 S. Ct. 1763 (2012). The court of criminal appeals has explained that this standard "recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence." *Adames*, 353 S.W.3d at 860. Therefore, on appellate review, we determine whether based on "cumulative force of all the evidence" the necessary inferences made by the trier of fact are reasonable. *Id.*

Viewing all the evidence in the light most favorable to the verdict, we find the evidence sufficient to sustain Butler's conviction because it shows more than mere opportunity. The evidence shows the witness, Wilson, saw two men in a pickup truck pulling a flatbed trailer with a four-wheeler vehicle on top of the trailer. Wilson saw the men leave Landmark Equipment in a pickup truck during early morning hours when Landmark was not open. As they left, the men in the pickup truck ran a stop sign and drove fast. When Wilson followed them and turned on his emergency flashers, the men in the pickup truck sped up. The evidence further shows Wilson saw the men in the pickup truck turn down a narrow dirt road and then return to the main road without the trailer. When law enforcement officers arrived, Wilson saw the officers stop the two men in the pickup truck. Although Wilson could not identify the two men, he did testify that pictures of the truck, trailer, and utility vehicle looked like the ones he had been following.

Additionally, the evidence shows that although the lock on the gate at Landmark was fitted with a shroud so it could not be opened by a standard set of bolt cutters, the lock had nevertheless

been cut, and a set of bolt cutters that appeared to be able to cut the shroud was found in the pickup truck driven by the two men. The evidence further shows that a law enforcement officer saw the men in the pickup truck accelerate in a hurry out of the narrow road by the airport and run a stop sign. The passenger in the truck was identified as Butler. And, further, the road was so narrow, there was not room for two cars side by side. The four-wheeler that was left on the narrow road was the one that was missing from Landmark Equipment and, in fact, still had a Landmark Equipment price tag attached.

We hold this evidence is sufficient to sustain the conviction.

### ADMISSION OF EVIDENCE

In his second issue, Butler argues the trial court erred in admitting State's Exhibits 41 and 42 in the punishment phase because they were improperly authenticated in that the fingerprint expert could not match the convictions reflected in Exhibits 41 and 42 to Butler. We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 378 (Tex. Crim. App. 1990).

To establish a defendant has been convicted of a prior offense, the State is required to prove beyond a reasonable doubt that a prior conviction exists and that the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 920 (Tex. Crim. App. 2007). It is well-established that a prior conviction may be proved by certified copies of a judgment and a sentence, and authenticated copies of pen packets including fingerprints that are supported by expert testimony identifying them as identical with known prints of the defendant. *Beck v. State*, 719 S.W.2d 205, 209 (Tex. Crim. App. 1986). However, there are other methods the State may use to show the defendant is the same person convicted in a pen packet. *Id.* One way is to offer documentary proof that contains sufficient information to establish the existence of a prior conviction and the defendant's identity as the person convicted. *Flowers*, 220 S.W.3d at 921-22. The fact finder must

look at the totality of the evidence to determine whether there was a prior conviction and whether the defendant was the person convicted. *See id.* at 923.

Although the State in this case was unable to identify the fingerprints in Exhibits 41 and 42 as belonging to Butler, there was nevertheless sufficient evidence linking Butler to the prior convictions. The State's expert witness testified that State's Exhibits 41 and 42 were judgments and sentences bearing the name of James Ray Butler and the same unique identifying number assigned to James Ray Butler appeared in Exhibits 39 and 40. According to the witness, these were county identification numbers assigned by Tarrant County, Texas. Exhibits 41 and 42 also contained date of birth, race, sex, and age that likewise appeared on State's Exhibits 39 and 40. Considering the totality of the evidence, the trial court did not abuse its discretion in admitting State's Exhibits 41 and 42.

We affirm the trial court's judgment.

Karen Angelini, Justice

Do not publish